1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDWARD C. HARTNETT, *et al.*,

                Plaintiffs,

    v.

WASHINGTON FEDERAL BANK,

                Defendant.

Case No. C21-888-RSM-MLP

REPORT AND RECOMMENDATION

## I.     INTRODUCTION

This matter is before the Court on Defendant Washington Federal Bank's ("Washington Federal") Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). (Mot. (dkt. # 14).) Plaintiffs Edward C. Hartnett and Julie A. Hartnett ("Plaintiffs") filed a response (Pls.' Resp. (dkt. # 16)) and Washington Federal filed a reply (Def.'s Reply (dkt. # 20)). Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Washington Federal's motion to dismiss (dkt. # 14) be DENIED, as further explained below.

## II.     BACKGROUND

Plaintiffs are Washington Federal checking account holders. (Compl. (dkt. # 1) at 1.) Plaintiffs allege Washington Federal improperly charges its account holders non-sufficient fund ("NSF") fees more than once for the same underlying item, such as a check. (*Id.*) Plaintiffs allege claims for breach of contract and breach of the covenant of good faith and fair dealing. (*Id.* at 14.)

Under the Personal Deposit Account Agreement and Disclosures (the "Agreement" (dkt. # 1, Ex. A)) governing Plaintiffs' account, Washington Federal "may refuse to pay an item that . . . is drawn in an amount greater than the amount of funds then available for withdrawal . . . or which would, if paid, create an overdraft[.]" (Agreement at 5.) The Schedule of Consumer Fees & Service Charges ("Fee Schedule" (dkt. # 1, Ex. C)), which is incorporated into the Agreement (Agreement at 15), provides for an "Insufficient Funds" fee of "$30 per item."

In the events at issue here, Plaintiffs wrote a check to a merchant, who then presented the check to Washington Federal on July 13, 2018. (Compl. at 6.) Washington Federal rejected payment of the check due to insufficient funds and charged Plaintiffs a $25 NSF fee.[1] (*Id.*) On July 18, 2018, the merchant re-presented the check to Washington Federal, who rejected it again due to insufficient funds and charged Plaintiffs another $25 NSF fee. (*Id.*) Plaintiffs challenge only the second NSF fee. (*Id.*)

## III.     DISCUSSION

### A.     Legal Standards

Rule 12(b)(6) requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d

---

[1] Neither party explains why the fee was $25 rather than $30. The Fee Schedule is "[e]ffective 04/01/2020" and presumably the fee has increased since 2018. (Fee Schedule.)

903, 910 (9th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

**B.    Notice Requirement**

Washington Federal contends Plaintiffs cannot bring this action because they did not comply with a notice requirement in the Agreement. (Mot. at 6.) The Agreement provides:

> You agree not to assert a claim against us concerning any error, forgery or other problem relating to a matter shown on an Account statement unless you notified us of the error, forgery or other problem within sixty (60) Calendar Days after we made your statement available to you.

(Agreement at 8.) Because no party suggests extrinsic evidence is necessary to interpret the notice provision, the Court may decide this issue as a matter of law. *See Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn. 2d 411, 424 n.9 (Wash. 2008) ("Where the facts are undisputed, such as where the parties agree that the contract language controls and there is no extrinsic evidence to be presented, courts may decide the issue as a matter of law.").

Washington Federal argues the challenged NSF fee is a "problem" Plaintiffs were required to report. (Mot. at 6.) Plaintiffs contend Washington Federal's practice of imposing successive NSF fees is not the type of "error, forgery or other problem" to which the notice requirement applies. (Pls.' Resp. at 17.) In reply, Washington Federal argues that Plaintiffs allege

1   the challenged fee resulted from an "unauthorized second payment request" by the merchant.

2   (Def.'s Reply at 2.)

3       Washington Federal's argument mischaracterizes Plaintiffs' allegations. Plaintiffs have

4   not alleged the merchant's re-presentation of the check was unauthorized, but that Washington

5   Federal's imposition of a second NSF fee on the same check breaches the Agreement. (*See* Mot.

6   at 10 ("Plaintiffs do not dispute that, under both Washington and federal law, a merchant may re-

7   present checks for payment multiple times.").) Washington Federal's citation to *Crockrom v.*

8   *Bank of Am.* is thus inapposite. (Def.'s Reply at 2 (citing 2020 WL 6747034 (S.D.N.Y. Nov. 17,

9   2020)).) In that case, the defendant bank's challenged action—miscoding of transactions—was

10   "erroneous, rather than intentional." *Crockrom*, 2020 WL 6747034 at *4. Here, there is no

11   dispute that Washington Federal intentionally imposed successive NSF fees on one check.

12       Because the notice requirement expressly concerned "error, forgery or other problem,"

13   read as a whole, the provision is focused on fraudulent actions by third parties or unintentional

14   errors by Washington Federal. The intentional imposition of fees, as a matter of policy, was not

15   the type of "problem" subject to the notice requirement. *Cf. Smith v. Fifth Third Bank*, 2019 WL

16   1746367, at *8 (S.D. Ohio, April 18, 2019) ("read as a whole, the provision is reasonably

17   construed as focused on forgeries, fraud, and other alterations by third parties—the type of

18   discrepancies for which Fifth Third would rely upon its accountholders to provide it with

19   notice.").

20       Because the notice requirement in the Agreement does not apply to the challenged NSF

21   fees at issue here, it does not bar Plaintiffs' claims. The Court thus need not reach Plaintiffs'

22   alternative argument that it would be unconscionable to dismiss their claims based on the notice

23   provision.

1    C.    **Breach of Contract**

2         Washington Federal contends Plaintiffs' claim for breach of contract fails because there

3    is only one interpretation of the Agreement: that Washington Federal is permitted to charge NSF

4    fees each time a check is presented or re-presented for payment. (Mot. at 8.) Plaintiffs contend

5    the Agreement contains no language permitting multiple NSF fees per check. (Pls.' Resp. at 9.)

6    At most, Plaintiffs contend, the Agreement is ambiguous and thus must be construed against

7    Washington Federal as the drafter of a contract of adhesion. (*Id*.)

8         If "a contract provision is subject to two or more reasonable interpretations, it is

9    ambiguous and presents a question of fact as to its meaning." *Empire Health Found. v. CHS/*

10   *Cmty. Health Sys. Inc.*, 370 F.Supp.3d 1252, 1260 (E.D. Wash. 2019) (citing *Viking Bank v.*

11   *Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713 (Wash. App. 2014); *see also Bort v. Parker*,

12   110 Wn. App. 561, 575 (Wash. App. 2002) ("If a contract has two or more reasonable meanings

13   when viewed in context, a question of fact is presented.")). Here, if the Agreement "is

14   ambiguous, it presents a question of fact inappropriate for resolution on a motion to dismiss."

15   *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir. 2018).

16        The Agreement permits Washington Federal to "refuse to pay an item that . . . is drawn in

17   an amount greater than the amount of funds then available for withdrawal[.]" (Agreement at 5.)

18   The Fee Schedule permits Washington Federal to impose an NSF fee "per item." (Fee Schedule.)

19   Neither document defines "item." Plaintiffs contend the item here is the check they wrote to the

20   merchant. (Pls.' Resp. at 2.) Washington Federal contends the item is the merchant's

21   presentment or re-presentment of that check. (Def.'s Reply at 4.)

22        Both parties offer cases from other jurisdictions interpreting different contract provisions.

23   These are of limited value in interpreting Washington Federal's Agreement. In particular, in the

cases Washington Federal cites, the contracts at issue defined what types of events would trigger NSF fees. For example, in *Haines*, the contract allowed fees "per item" and defined item to include automated clearing house ("ACH") withdrawals. *Haines v. Wash. Trust Bank*, 2020 WL 6861458, at *1, 3 (Wash. Super. Nov. 17, 2020). Thus, when a check was presented as an ACH withdrawal twice and rejected both times, the bank was permitted to impose a fee twice. Here, however, the Agreement does not define item.

Washington Federal requests the Court take judicial notice of a complaint and an order granting in part a defendant bank's motion to dismiss in a case before the Superior Court of the State of Washington. (*See* dkt. # 15, Ex. A, B.) This case does not support Washington Federal's motion, however, as it involves NSF fees "per transaction," not per item as in the Agreement at issue here. (*Id.*, Ex. A at 9.) The Court declines to take judicial notice of these documents as they are not relevant to the instant motion.

Washington Federal also cites a Consumer Financial Protection Bureau ("CFPB") study that, in describing its data collection practices, stated: "If an item (such as a check or ACH debit) was presented more than once, each occurrence was counted as a separate transaction." *Data Point: Checking account overdraft* at 6 n.4 (CFPB Jul. 2014), *available at* https://files.consumerfinance.gov/f/201407_cfpb_report_data-point_overdrafts.pdf (last visited Dec. 3, 2021). This is merely a description of how data in the study were categorized. Even if this were intended as a statement of the law or was in any way relevant to the Agreement at issue here, it would not help Washington Federal. The study describes a check as an item that can be presented more than once, which is Plaintiffs' position. Each presentation may be a separate transaction, but the Fee Schedule provides for NSF fees per item and not per transaction.

Consumer guidance by the Office of the Comptroller of the Currency ("OCC") is no more helpful to Washington Federal. (Mot. at 10.) The OCC's guidance states that a bank "may attempt to deposit the check two or three times when there are insufficient funds in your account . . . . Overdraft or insufficient funds fees can be assessed each time the check is submitted." OCC, Help Topics, Bank Accounts, Non-Sufficient Funds Fees & Overdraft Protection (Oct. 2020), *available at* https://www.helpwithmybank.gov/help-topics/bank-accounts/nsf-fees-overdraft-protection/overdraft-protection-programs/overdraft-resubmitted.html (last visited Dec. 3, 2021). There is no dispute that a bank is permitted to charge NSF fees each time a check is presented or re-presented, so long as the bank discloses those charges. Here, Plaintiffs allege Washington Federal charged successive NSF fees in violation of the Agreement. The OCC's guidance does not permit banks to violate their contracts with their account holders.

Washington Federal next argues that the Uniform Commercial Code's ("UCC") requirement that banks process re-presented checks the same way as initially presented checks means that "each check presentment [is] a new item." (Mot. at 11.) Washington Federal's own citations contradict their argument, however. UCC commentary states that "checks are checks, and the rules are the same whether an item is arriving for the first, second, or even third time." 2 White, Summers, & Hillman, UCC § 20:30 (6th ed.). This commentary refers to a singular item, *i.e.*, a check, that may arrive multiple times. This supports Plaintiffs' interpretation of the Agreement rather than Washington Federal's. The check is the item, and the Fee Schedule only allows one fee per item, regardless of how many times it is presented or re-presented. The term "re-presented" would lose meaning if an item became a new item each time it was presented. On reply, Washington Federal contends that "Plaintiffs' argument that all re-presentments are the same 'item'" has illogical consequences. (Def.'s Reply at 5.) Washington Federal misconstrues

1    Plaintiffs' argument, which is that the same item can be presented or re-presented, not that

2    presentation or re-presentation is itself an item.

3            Washington Federal's argument, raised for the first time on reply, concerning "substitute

4    checks" similarly suffers from flawed logic. Washington Federal asserts that the merchant

5    presented the "original check" on July 12, 2018, and presented a "substitute check" on July 17,

6    2018. (Mot. at 3-4.) Washington Federal contends that, because federal law and the Agreement

7    define "original check" and "substitute check" differently, the merchant's "second payment

8    request was a new 'item[.]'" (Def.'s Reply at 5.) Federal law provides that "[t]he term check

9    includes an original check and a substitute check." 12 C.F.R. § 229.2(k)(7). "There is only one

10   original check for any particular payment transaction. However, multiple substitute checks could

11   be created to represent that original check at various points in the check collection and return

12   process." *Id.* at § 229, App. E § WW. In other words, the "substitute check" that the merchant

13   submitted represented the original check. This does not support Washington Federal's argument

14   that the substitute check was an entirely new item subject to a new NSF fee. The Agreement, in

15   discussing substitute checks, provides that an account holder may receive a refund if the bank

16   "withdrew money from your account more than once for the same check[.]" (Agreement at 23.)

17   In other words, the original check and the substitute check are both the same check, under

18   Washington Federal's own Agreement. Neither federal law nor the Agreement indicates the

19   original check and the substitute check were separate items for which separate NSF fees were

20   permitted.

21           On reply, Washington Federal argues that the UCC establishes that an item is "the right

22   to payment, not . . . the paper check." (Def.'s Reply at 4 (citing RCW 62A.4-104(9)).) The UCC,

23   however, defines an item as "an instrument or a promise or order to pay money[.]" RCW

62A.4-104(9). A check is a type of instrument. *See* RCW 62A.3-104(c). A check is therefore an item under the UCC. Moreover, the Agreement does not state that it uses the UCC's definition of item. It does not define item in any way.

Finally, Washington Federal makes a fairness argument, contending that each presentment of a check "impos[es] unrecoverable costs on [Washington Federal] for processing each payment attempt, and leaves [Plaintiffs'] merchant unpaid." (Mot. at 12.) The question of how best to ensure merchants are paid is not before this Court. Nor is the question of whether $25 adequately compensates Washington Federal for, on two occasions, checking Plaintiffs' account balance and then refusing to pay the check. The question that is before this Court is whether the Agreement, which Washington Federal not only agreed to but wrote, permits Washington Federal to charge $50 instead of $25 for doing so. Washington Federal has not shown that its contract unambiguously allows multiple NSF fees for a single check. Accordingly, the Court recommends Washington Federal's motion to dismiss Plaintiffs' contract claims be denied.

### D.    Breach of Implied Covenant of Good Faith and Fair Dealing

Washington Federal contends Plaintiffs' claim for breach of the duty of good faith and fair dealing must fail whether or not their claim for breach of contract succeeds or fails. (Mot. at 15.) Washington Federal argues that, because the Agreement permits successive NSF fees, the duty of good faith cannot impose additional contract terms. "The covenant of good faith applies when the contract gives one party discretionary authority to determine a contract term; it does not apply to *contradict* contract terms." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738 (Wash. App. 1997). As discussed above, however, the Court concludes that the Agreement does not unambiguously allow successive NSF fees.

In the alternative, Washington Federal contends that if it "failed to follow the express

terms of the Agreement, Plaintiffs would have a claim for breach of contract, and their implied

covenant claim would still fail." (Mot. at 15 n.5.) At this juncture, however, whether Washington

Federal violated the Agreement has not been determined. Accordingly, the Court recommends

Washington Federal's motion to dismiss Plaintiffs' claim for breach of the implied covenant of

good faith and fair dealing be denied.

### E.     Federal Preemption of State Law

Washington Federal contends federal law regulating bank disclosures preempts Plaintiffs'

claims because "the real purpose of this action is to compel [Washington Federal] to modify its

disclosure practices." (Mot. at 16.) This argument misconstrues Plaintiffs' claims. Plaintiffs

allege Washington Federal breached its Agreement with them and seek restitution of excess NSF

fees paid. (Compl. at 14-16.) Plaintiffs do acknowledge that, if Washington Federal had

disclosed its practice of charging successive NSF fees on the same check, their claims would fail.

(*Id.* at 8-13.) This acknowledgment does not, however, convert their contract breach claim into a

suit seeking to force Washington Federal to modify its disclosure practices.

"In analyzing preemption, [courts] ask whether the state law 'prevent[s] or significantly

interfere[s] with the national bank's exercise of its powers.'" *Gutierrez v. Wells Fargo Bank, NA*,

704 F.3d 712, 722 (9th Cir. 2012) (quoting *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517

U.S. 25, 33 (1996)). "[S]tate laws of general application continue to apply to national banks

when 'doing so does not prevent or significantly interfere with the national bank's exercise of its

powers.'" *Id*.

In *Gutierrez*, the Ninth Circuit held that the defendant bank's ordering of posting debits

and credits to plaintiffs' accounts in order to maximize overdraft fees was not subject to state

laws prohibiting unfair or fraudulent practices. 704 F.3d at 723. Unfair practices claims were preempted because the "posting order falls within the OCC's definition of a pricing decision authorized by federal law." *Id.* at 725. Fraudulent misrepresentation claims were preempted because the "requirement to make particular disclosures falls squarely within the purview of federal banking regulation and is expressly preempted[.]" *Id.* at 726. Here, Plaintiffs do not seek to require particular disclosures. They allege that Washington Federal made a proper disclosure in the Agreement that it will charge one NSF fee per check but failed to comply with the Agreement.

Next, Washington Federal cites a case where plaintiffs alleged fraud and unfair mortgage practices. The court found federal preemption because "plaintiffs [were] attempting to use [state] laws to require particular disclosures at particular times and in a particular manner." *Fultz v. World Sav. & Loan Ass'n*, 2008 WL 4131512, at *2 (W.D. Wash. Aug. 18, 2008); *see also Vatomanyuk v. Quality Loan Svc. Corp. of Wash.*, 699 F.Supp.2d 1242 (W.D. Wash. 2010) (Consumer Protection Act claims related to mortgage lending practices preempted). Here, Plaintiffs are not attempting to require particular disclosures. Instead, they allege that the Agreement prohibits Washington Federal from charging successive NSF fees on the same check and seek restitution of fees paid. They have not sought to alter Washington Federal's disclosures. (*See* Compl. at 15-16 ("Prayer for Relief").)

Washington Federal additionally cites a case holding that, "[t]o the extent Plaintiff challenges a perceived failure to disclose [or] the specific language used in the disclosure, . . . those arguments are clearly preempted." *Lambert v. Navy Fed. Credit Union*, 2019 WL 3843064, at *3 (E.D. Va. Aug. 14, 2019). Yet that same case states that "true breach of contract . . . claims are not federally preempted, even if the result of those claims may affect a federal credit union's

fee disclosures." *Id.* at *2. Banks "must still comply with the terms of their contracts related to fee practices." *Id.* at *3. The court went on to analyze plaintiff's contract breach claims. *See also Foltz v. Matanuska Valley Fed. Credit Union*, 2021 WL 865542, at *6 (Alaska Super. Jan. 12, 2021) (Plaintiff's "true breach of contract [and] breach of good faith and fair dealing . . . claims survive preemption to the extent Foltz is alleging that MVFCU has failed to comply with the express terms of the Agreement or affirmatively misrepresented its fee practices.").

Finally, Washington Federal argues this case resembles *Cinar*, where the court held a plaintiff "cannot simply frame a disclosure issue as a breach of contract claim to avoid federal law addressing disclosure requirements." *Cinar v. Bank of Am., N.A.*, 2014 WL 3704280, at *4 (D. Md. July 22, 2014). The plaintiff alleged that, because "the Bank disclosed the $100 Legal Process Fee, it contracted to charge only the disclosed fee and not any additional [attorney] fees" despite the fact that the disclosures stated that "fees and expenses may include attorneys' fees." *Id.* at *1, 3. The Court held that "to find for [plaintiff] would essentially require the Bank to disclose such attorney's fees in the future, thereby conflicting with the clear intent of Congress to provide uniform disclosure requirements for national banks." *Id.* at *4. Here, in contrast, if the Court were to find for Plaintiffs, Washington Federal would not be required to change its disclosures. It would simply have to abide by its Agreement, under the interpretation Plaintiffs advance.

Plaintiffs here allege true contract claims. As discussed above, Washington Federal has not established that Plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, the Court recommends Washington Federal's motion to dismiss be denied.

REPORT AND RECOMMENDATION - 12

# IV.    CONCLUSION

The Court recommends that Washington Federal's motion to dismiss (dkt. # 14) be DENIED.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on December 24, 2021.

The Clerk is directed to send copies of this order to the parties and to the Honorable Ricardo S. Martinez.

Dated this 7th day of December, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge