The Honorable Michelle L. Peterson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDWARD C. HARTNETT and JULIE A.
HARTNETT, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

        v.

WASHINGTON FEDERAL, INC. d/b/a
WASHINGTON FEDERAL BANK

        Defendant.

No. 2:21-cv-00888-RSM-MLP

**UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

NOTE ON MOTION CALENDAR:
June 13, 2022

## INTRODUCTION

Plaintiffs Edward and Julie Hartnett hereby respectfully request that the Court grant preliminary approval of the parties' proposed class action settlement in this matter under Fed. R. Civ. P. 23 and approve and authorize notice to the members of the proposed Settlement Class.

After briefing Defendant Washington Federal Bank's ("WaFd") motion to dismiss, whose denial was recommended by Magistrate Judge Peterson in a Report and Recommendation, further briefing Defendant's objections to the Report and Recommendation , conducting informal discovery—including exchanging information relating to damages—and subsequently engaging

Motion Preliminary Approval of Stlmt - Page 1
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

1   in arms-length settlement negotiations, the parties have reached the proposed class action

2   Settlement Agreement and Release (the "Settlement") that is now before the Court for

3   preliminary approval.[1]

4       The Settlement, which was the result of hard-fought, arm's-length negotiations by

5   experienced counsel, creates a cash Settlement Fund of $495,000, a recovery that represents

6   100% of the total estimated actual damages. Kaliel Decl. ¶ 7. The Settlement funds will be

7   distributed to the members of the Settlement Class by check, without need for Class Members to

8   complete a claim form or take any additional steps. In addition, Defendant has modified its

9   disclosures to reflect its practices with respect to Retry insufficient fund ("NSF") and overdraft

10  ("OD") Fees, and will pay all costs of notice and administration of the Settlement separately—

11  meaning, in effect, that the Settlement Class has recovered significantly more than 100% of its

12  best-case damages. The Settlement represents an excellent result for Settlement Class Members

13  in this litigation, and the Court should grant preliminary approval of the Settlement. An order

14  granting preliminary approval will allow the parties to disseminate notice of the Settlement to

15  the Class and allow the Court to set a hearing to consider whether to grant final approval.

16      The Court should preliminarily approve the proposed Settlement because it is a fair,

17  reasonable, and adequate compromise of genuinely contested claims and it will provide the

18  Settlement Class Members with substantial monetary relief without the risk and delay of

19  further litigation. The terms of the Settlement are fair, reasonable, and consistent with

20  precedent concerning class settlements in Washington and the Ninth Circuit. A proposed

21  Order granting preliminary approval accompanies this motion.

22

23

24

25

26  [1] The Settlement Agreement is attached as Exhibit C to the Declaration of Jeffrey Kaliel in
    Support of the Motion for Preliminary Approval ("Kaliel Decl.").

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

# STATEMENT OF FACTS

**A.    The Lawsuit**

On July 1, 2021, Plaintiffs initiated this action by filing a Class Action Complaint with the caption of *Hartnett v. Washington Federal Bank,* Case No. 2:21-cv-00888-RSM-MLP, in the Western District of Washington, asserting causes of action for Breach of Contract (including Breach of the Covenant of Good Faith and Fair Dealing) (the "Complaint").

Defendant moved to dismiss the Complaint on October 1, 2021.  On December 7, 2021, the assigned Magistrate Judge issued a Report & Recommendation ("R&R"), recommending denial of Defendant's Motion to Dismiss.  On December 21, 2021, Defendant filed Objections to the R&R.  On January 18, 2022, Plaintiffs filed a Response to Defendant's Objections.  The District Judge has not ruled on Defendant's Objections.

On February 7, 2022, the Parties jointly sought a stay of the litigation in order to discuss settlement.  The Court granted the stay on February 16, 2022, and extended the stay on April 5, 2022.  The litigation remains stayed at this time.

The Parties thereafter engaged in informal discovery.  During that process, Defendant provided Plaintiffs with data and information that allowed Plaintiffs to estimate class-wide damages. Subsequently arms-length settlement discussions resulted in an agreement in principle, and over the next several weeks the Parties exchanged draft of and finalized a full settlement agreement.

**B.    The Settlement Terms**

    **1.    The Settlement Class**

The Settlement provides for certification of a class of certain current and former WaFd Bank accountholders. Defendant agrees to certification of this Class solely for purposes of settlement:

> Customers of Defendant who were charged Retry NSF/Overdraft Fees during the Class Period, and either (1) ceased being a customer of Defendant on or before August 31, 2021, or (2)

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

affirmatively opted out of contractual arbitration with Defendant before January 11, 2022.

"Class Period" shall mean:  For personal account customers, the time period from November 15, 2015 until August 31, 2021; for business account customers, the time period between July 1, 2020 and August 31, 2021.

Settlement ¶¶ 1(e), 1(u).

### 2. Value of the Settlement to the Settlement Class Members

In exchange for the dismissal of this action and the release in the Settlement, WaFd has agreed to pay $495,000 to be used for direct payments to the members of the Settlement Class (the "Settlement Fund"), after deductions of Court-approved fees and expenses, Settlement ¶ 1(x).  The Settlement does not require Settlement Class Members to submit a claim or take any action to claim the monies they are entitled to under the Settlement.  Rather, payments will be made to Class Members by mailing a check to their last known address.  *Id.* ¶ 8(d)(v).  Each Settlement Class Member will receive their pro rata share of the Net Settlement Fund, based on the total number of fees that the Class Member paid.  *Id.*

### 3. Notice to Class Members

The Settlement includes proposed email, postcard, and long form notices to the Settlement Class Members that inform them of the terms of the Settlement and their rights to object to, or opt-out of, the Settlement, or to do nothing and receive the benefits of the Settlement and be bound by it.  Settlement, Exs. 1-3.  Email notices will be provided to WaFd customers who have provided their email addresses to WaFd; postcard notice will be mailed directly to Settlement Class Members and long-form notice will be available on the Settlement website. Settlement ¶ 5. The website will provide Class Members with additional information relating to the Settlement. *Id.*

### 4. Attorneys' Fees and Expenses, Settlement Administrator's Costs, and Class Representative Service Award

Motion Preliminary Approval of Stlmt - Page 4
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446

1    Class Counsel will file a motion with the Court requesting to be paid up to one-third of

2    the Settlement Fund as attorneys' fees and will seek reimbursement of reasonable expenses.

3    Settlement ¶ 8(d)(ii).  Class Counsel will also file a motion requesting that the Court approve a

4    payment of a service award of $5,000 to the named Plaintiffs, in recognition of their efforts in

5    this case that have resulted in a benefit to thousands of others.  Settlement ¶ 8(d)(iii).

6                                              **ARGUMENT**

7    **I.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

8        **A.    Standard for Preliminary Approval of the Settlement**

9        The Ninth Circuit recognizes the "strong judicial policy that favors settlement,

10   particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation*,

11   516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th

12   Cir. 1992).   The strong preference for class action settlements is precipitated by the

13   overwhelming uncertainties of the outcome, expense, management, and difficulties in proof

14   inherent in class action lawsuits.  *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

15   Cir. 1976) (noting that class action settlements are especially favorable in light of "an ever

16   increasing burden to so many federal courts and which frequently present serious problems of

17   management and expense.").

18       Approval of class action settlement "take[s] place over three stages.  First, the parties

19   present a proposed settlement asking the Court to provide 'preliminary approval' for both (a) the

20   settlement class and (b) the settlement terms." *Rinky Dink Inc. v. Electronic Merchant Systems

21   Inc.*, No. C13-1347, 2015 WL 11234156 *1 (W.D. Wash. Dec. 11, 2015).  "Second, if the court

22   does preliminarily approve the settlement and class, (i) notice is sent to the class describing the

23   terms of the proposed settlement, (ii) class members are given an opportunity to object or opt

24   out, and (iii) the court holds a fairness hearing at which class members may appear and support

25   or object to the settlement." *Id.*  "Third, taking account of all of the information learned during

26   the aforementioned processes, the court decides whether or not to give final approval to the

Motion Preliminary Approval of Stlmt - Page 5
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446

settlement and class certification." *Id.*; *see also In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 448 (C.D. Cal. 2014). At the final approval stage, the court considers the settlement in light of a non-exhaustive list of factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanson v. MGM Resorts Int'l.*, No. 16-cv-1661-RAJ, 2018 WL 3630284 at *4 (W.D. Wash. July 31, 2018) (utilizing first six factors to assess fairness for purposes of preliminary approval).

At the preliminary approval stage, the focus is simply on whether the settlement is "within the range of possible judicial approval." *In re M.L. Stern Overtime Litigation*, No.07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. Apr. 13, 2009) (citations and quotation marks omitted); *Rinky Dink*, 2015 WL 11234156 at *4. Accordingly, the Court need not scrutinize every detail of the settlement at this juncture, since "class members will subsequently receive notice and have an opportunity to be heard" at the time before final approval. *In re M.L. Stern*, 2009 WL 995864 at *3.

The standard inquiry the trial court explores is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); Fed. R. Civ. P. 23(e)(2). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) ("[A] full fairness analysis is unnecessary" at the preliminary approval stage).

Motion Preliminary Approval of Stlmt - Page 6
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

1  Accordingly, the Court does not have "the ability to delete, modify or substitute certain

2  provisions." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice*, 688 F.2d at 630). In other

3  words, the "settlement must stand or fall in its entirety." *Id.*

4      Before the Court can grant preliminary approval and direct notice to the class, a plaintiff

5  must "show[] that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)[.]"

6  Fed. R. Civ. P. 23(e)(1)(B) (eff. Dec. 1, 2018). Approval under amended Rule 23(e)(2) requires

7  that the settlement be fair, reasonable, and adequate, taking into consideration the following

8  factors: (1) whether "the class representatives and class counsel have adequately represented the

9  class"; (2) whether the settlement "was negotiated at arm's length"; (3) whether "the relief

10 provided for the class is adequate"; and (4) whether the settlement "treats class members

11 equitably relative to each other." *Id.* (e)(2)(A)-(D); *see also In re Chrysler-Dodge Jeep Ecodiesel*

12 *Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 17-md-2777, 2019 WL 536661, at *8

13 (N.D. Cal. Feb. 11, 2019). There is, not surprisingly, overlap between the 2018 amendment's

14 fairness, reasonableness, and adequacy considerations and those set out in the Ninth Circuit test

15 in *Churchill*, 361 F.3d at 575. Indeed, these factors are substantially similar to those that were

16 already considered by courts in the Ninth Circuit. *E.g.*, *In re Tableware Antitrust Litig.*, 484 F.

17 Supp. 2d 1078, 1079 (N.D. Cal. 2007) (considering preliminary approval appropriate "where [1]

18 the proposed settlement appears to be the product of serious, informed, non-collusive

19 negotiations, [2] has no obvious deficiencies; [3] does not improperly grant preferential treatment

20 to class representatives or segments of the class, and [4] falls within the range of possible

21 approval . . . .") (internal quotation and citation omitted) (emphasis added).

22     Amended Rule 23(e)(2), however, establishes a uniform set of core approval factors that

23 the Advisory Committee Note states "should always matter to the decision" of the district court

24 as to whether to approve the proposal. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018

25 amendment. Plaintiffs will predominantly address the amended Rule 23(e) factors now and fully

26 address each of the *Churchill* factors in their motion for final approval of the Settlement.

Motion Preliminary Approval of Stlmt - Page 7
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

For the reasons set forth in detail below, the proposed Settlement is fundamentally fair, adequate, and reasonable—falling squarely into the range of preliminary approval.

**B.    The Negotiation Process Supports Preliminary Approval**

The Ninth Circuit instructs courts to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625).  Perhaps the most critical inquiry to the assist the Court is determining whether the settlement is "the product of an arms-length, non-collusive, negotiated resolution." *Id.*  If the answer is yes, courts will presume the settlement is fair and reasonable. *Spann II*, 314 F.R.D. at 324.  "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Federal Express Corp.*, Nos. C03-2659 SI, C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Plaintiffs' counsel have extensive experience in litigating consumer cases, including class actions involving wrongful OD and NSF fees.  Kaliel Decl. ¶¶ 2-6, 8.  Plaintiffs' counsel examined Defendant's practices and policies and then diligently obtained the data needed to analyze the class claims.  Kaliel Decl. ¶ 9.  Furthermore, before those negotiations, Plaintiffs secured an analysis of Defendant's transactional data regarding affected accountholders, performing an analysis of class damages.  During the negotiations, Plaintiffs' counsel raised the potential for seeking leave to file an Amended Complaint potentially seeking treble damages and attorneys' fees, which would have increased the potential exposure significantly.  Kaliel Decl., ¶ 10.  These factors—the time and effort spent on the settlement negotiations and the quantity and quality of information used during those negotiations—favor preliminary approval of the Settlement because they strongly indicate that there was no collusion in the result that the parties achieved.  Accordingly, all evidence indicates that this Settlement was not "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Spann II*, 314 F.R.D. at 324–25.

Motion Preliminary Approval of Stlmt - Page 8
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

1

2

**C.    The Settlement Falls Within the Range of Possible Judicial Approval Because the Value of the Settlement Benefits Are Significant in Light of the Risks of Continued Litigation**

3

4    This Settlement provides significant relief to the Settlement Class and clearly falls within

5    the range of possible judicial approval.  "To evaluate the range of possible approval criterion,

6    which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's

7    expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust*

8    *Litig.*, 484 F. Supp. 2d at 1080.  "As the Ninth Circuit has noted, 'the very essence of a settlement

9    is compromise, a yielding of absolutes and an abandoning of highest hopes.'"  *Spann II*, 314

10    F.R.D. at 325 (quoting *Officers for Justice*, 688 F.2d at 624).

11    When considering whether "the relief provided for the class is adequate," amended Rule

12    23(e)(2)(C) requires the Court to take into account: "(i) the costs, risks, and delay of trial and

13    appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including

14    the method of processing class-member claims; [and] (iii) the terms of any proposed award of

15    attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(i)-(iii) (eff. Dec. 1,

16    2018.[2]

17    **1.    The Relief Provided to the Settlement Class Is Substantial**

18    The Settlement provides substantial relief to the Settlement Class—as discussed above,

19    over 100% of damages. Here, the total amount of the Settlement—which was the product of

20    vigorous negotiations—is fair, reasonable and adequate in light of the risks the Plaintiffs and

21    Settlement Class faced and the potential damages available.  Indeed, the Settlement represents

22    100% of the potential contract-claim damages in this matter.  Kaliel Dec., ¶ 12.  And that is

23    before accounting for the value to the Class of the costs of notice and administration, which will

24

25

26    [2] Rule 23(e) also requires the Court to consider "any agreement required to be identified under Rule 23(e)(3)[.]" Other than the settlement agreement at issue, there are no other agreements to disclose. Kaliel Decl. ¶ 11\.

be paid separately by Defendant (and are estimated at approximately $55,000), or the value of the important disclosure improvement WaFd has implemented.  Kaliel Decl., ¶ 13.

Further, the Settlement treats all Settlement Class Members fairly and equally.  Each Settlement Class Member is entitled to a proportional share of the Net Settlement Fund. Settlement ¶ 8.  And as described above, Settlement Class Members need to take no action to receive the Settlement benefits, which will be automatically deposited or delivered by check.

### 2.    The Risks of Continued Litigation Are Significant

This recovery is excellent not only because of the valuable benefits obtained for the Class, but also because Plaintiffs would have faced a significant risk in litigating this case through trial. *See Hanson*, 2018 WL 3630284 at *4–5 (finding that uncertain outcome of litigated class certification motion, difficulty of proving damages, and limited legal precedent on unique issues posed risks to plaintiff's case and weighed in favor of settlement approval).  The Court has not yet ruled on WaFd's objections to the Report and Recommendation on WaFd's motion to dismiss, and Plaintiffs faced some risk that the Court would grant WaFd's motion in whole or in part.  Likewise, even if Plaintiffs survived a Motion to Dismiss and were permitted to amend to bring claims under consumer protection statutes, the ability to establish causation on those claims class-wide would have presented hotly contested legal issues.  The parties would have litigated class certification heavily, presenting further risk to the proposed class.

Accordingly, although Plaintiffs are confident in the strength of their case against WaFd and the likelihood of success at each stage, the outcome if Plaintiffs proceeded with further litigation would be uncertain. Moreover, even if Plaintiffs were successful the class certification and trial stages in the district court, the risk of one or more lengthy appeals would be high, including a potential interlocutory appeal under Fed. R. Civ. P. 23(f).  The degree of uncertainty supports preliminary approval of the proposed Settlement.

Class Counsel have considered: (1) the complexities of this litigation; (2) the risks and expense of continuing this case through discovery, class certification, summary judgment, and

Motion Preliminary Approval of Stlmt - Page 10
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446

trial against WaFd; and (3) the likely appeal(s) if Plaintiffs do prevail at trial or earlier stages. After weighing these against the guaranteed recovery to the Settlement Class, and what Class Counsel believe to be the significant monetary benefits to the Settlement Class, Class Counsel firmly believe the Settlement represents a desirable resolution of this litigation.  Kaliel Decl. ¶ 14.

### 3.    The Proposed Method of Distributing Relief to the Settlement Class Is Fair and Effective

Here, the proposed method of distribution will be fair and effective. First, under the proposed Settlement, participating Settlement Class Members need to take no action to receive the Settlement benefits, which will be delivered by check. By distributing benefits automatically, the Settlement ensures that relief will be effectively distributed to the Class.

Second, because the Net Settlement Fund will be allocated to Settlement Class Members proportionally based on the number of challenged Retry NSF/OD Fees each incurred, there is no doubt that the Settlement benefits will be distributed fairly.

### 4.    Counsel's Request for Attorneys' Fees, Expenses, and Costs Will Be Subject to Approval by the Court

Finally, the Settlement requires that any award for payment of attorneys' fees, expenses, and costs is subject to proper motion to, and approval by, the Court.  Class Counsel will apply to the Court for an award of no more 33 1/3% of the Settlement Fund, in addition to reasonable costs and expenses.  In addition, Plaintiffs will seek a service awards to Plaintiffs not to exceed $5,000.  Settlement Class Members will be informed of these amounts in the notices, Settlement, Exs. 1-3, and will of course have an opportunity to submit objections to Class Counsel's request for attorneys' fees, expenses, and costs, or to the Service Award requests.  *Id.*  Thus, all the considerations under Rule 23(e)(2)(C) support preliminary approval.

### D.    The Proposed Releases Are Appropriately Tailored to the Claims at Issue

"Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contains obvious substantive defects such as . . . overly broad releases of

Motion Preliminary Approval of Stlmt - Page 11
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446

liability." Newberg on Class Actions § 13:15, at p. 326 (5th ed. 2014); *see e.g.*, *Fraser v. Asus Computer Int'l.*, 2012 WL 6680142, *3 (N.D. Cal. 2012). The releases in the proposed Settlement are not overly broad. Settlement Class Members who do not timely exclude themselves from the Settlement will be deemed to have released WaFd from claims:

> that relate to the conduct, omissions, duties or matters during the Class Period that were or could have been alleged based on the factual transactions alleged in the Complaint ("Released Claims") including claims resulting from, related to, or arising out of the following: (1) the assessment or charging of multiple NSF Fees and/or Overdraft Fees when there are multiple attempted presentments for collection on individual Automated Clearing House (ACH) payments or check payments (including an electronic check); and (2) the sufficiency of Defendant's disclosures in its deposit account terms and conditions and Settlement Class Members' assent to the same relating to (1) and (2) (collectively, the "Released Claims").

Settlement ¶ 12(a). Since the Release is limited to the scope of the litigation, it is fair and adequate for preliminary approval. *See, e.g.*, *Spann II*, 314 F.R.D. at 327–28 ("With this understanding of the release, i.e., that it does not apply to claims other than those related to the subject matter of the litigation, the court finds that the release adequately balances fairness to absent class members and recovery for plaintiffs with defendants' business interest in ending this litigation with finality.").

### E.    Equitable Treatment of Class Members Relative to Each Other Supports Preliminary Approval

The Settlement authorizes Plaintiffs to seek a Service Award in an amount no greater than $5,000 for their service to the Class in bringing and pressing the lawsuit. Settlement ¶ 8. Importantly, any reduction of the incentive award by the Court shall not affect the rights and obligations under the Settlement. *Id.* In all other respects, the Settlement treats all Settlement Class Members, including Plaintiffs, identically and gives all Settlement Class Members the same opportunity to receive payments using the same distribution method.

Motion Preliminary Approval of Stlmt - Page 12
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

The Ninth Circuit recognizes that service awards given to named plaintiffs are "fairly typical" in class actions. *Rodriguez*, 563 F.3d at 958. Incentive awards serve "to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958–59. In evaluating whether the Settlement grants preferential treatment to Plaintiffs, "the court must examine whether there is a 'significant disparity between the incentive awards and the payments to the rest of the class members' such that it creates a conflict of interest." *Spann II*, 314 F.R.D. at 328 (citing *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013)). In arriving at such determination, courts will consider "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).

Here, the requested award is unlikely to create a conflict of interest between Plaintiffs and absent Class Members because the Settlement will remain in full force and effect, notwithstanding any reduction of the awards. *Spann II*, 314 F.R.D. at 328–29. Plaintiffs' requested award was not predicated on the existence of any special treatment or promise from Class Counsel. Kaliel Decl. ¶ 15.

## II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

### A.    The Proposed Class Satisfies the Rule 23(a) Requirements

At the preliminary approval stage, the Court's threshold task is to determine whether the proposed class satisfies the Rule 23(a) requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy, and the requirements set forth in Rule 23(b)(3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). Here, when ruling on class certification in the settlement context, the court need not explore the issue of manageability, "for the proposal is that there be no trial." *Id.* at 620. Here, provisional certification of the proposed Class for purposes of the Settlement is warranted because Plaintiffs satisfy all requirements set forth in Rule 23.

Motion Preliminary Approval of Stlmt - Page 13
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

### 1.    Numerosity

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664 (C.D. Cal. 2009); *see also Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) ("impracticability" exists where there is a "difficulty or inconvenience of joining all members of the class"). "While no exact numerical cut-off is required for the numerosity requirement, numerosity is presumed where the plaintiff class contains forty or more members." *Chester*, 2017 WL 6205788, at *5 (internal quotation marks and citations omitted).

Numerosity is clearly established here. There are 6,860 Settlement Class Members. *See* Kaliel Decl. ¶ 16. Accordingly, because the Class Members are certainly too numerous to join as plaintiffs, the numerosity requirement is met.

### 2.    Commonality

Commonality is satisfied if "there are any questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); *see Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (noting all that is required is a "single significant question of law or fact.") (emphasis added); *Hanson*, 2018 WL 3630284 at *2 (same). The inquiry regarding commonality involves whether Plaintiffs can show a common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Here, the Class Members share common legal and factual questions vis-à-vis WaFd's liability—for instance, whether its imposition of "retry" NSF/OD Fees based on a single alleged "item" or payment is a violation of the WaFd account agreement issued to accountholders. This question is the central legal question of the litigation and suffices to satisfy the commonality prong.

Motion Preliminary Approval of Stlmt - Page 14
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

### 3.    Typicality

Typicality is satisfied if the class representative's claims or defenses are typical to those of the Class.  Fed. R. Civ. P. 23(a)(3).  The Ninth Circuit applies the typicality requirement liberally: "representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020; *Hanson*, 2018 WL 3630284 at *2.  The "typicality" requirement is essential to ensure that the claims of the class representative is aligned with those of the class as a whole.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.*

Plaintiffs' claims are typical to those of the Class because they are based upon the same facts and the same legal and remedial theories as those of the Class.  Plaintiffs' and Settlement Class Members' claims allegedly arise from WaFd's alleged breach of its contract.  Every Settlement Class Member suffered the same form of damage as a result of that alleged breach: more NSF/OD Fees on their accounts than warranted.

### 4.    Adequacy

Adequacy is satisfied if the class representative "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit utilizes two questions to determine legal adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

Plaintiffs are adequate class representatives because they share common goals with all the Settlement Class Members of pursuing litigation to obtain recovery for allegedly improper bank fees.  There is no evidence in the record that Plaintiffs harbor any interest antagonistic to the interests of the Class.  Kaliel Decl. ¶ 17.  Plaintiffs have been proactive in this litigation,

Motion Preliminary Approval of Stlmt - Page 15
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

1    maintaining close contact with Class Counsel regarding the progress of the litigation.  *Id.* ¶ 18.

2    Therefore, the adequacy requirement is satisfied.

3    **B.    The Proposed Class Satisfies the Rule 23(b)(3) Requirements**

4    Class actions under Rule 23(b)(3) must also satisfy the following two requirements,

5    which are commonly referred to as "predominance" and "superiority," respectively: (1) "the

6    questions of law and fact common to class members predominate over any questions affecting

7    only individual members, and" (2) "that a class action is superior to other available methods for

8    fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs have

9    satisfied both of these requirements.

10    **1.    Predominance**

11    The predominance prong turns on "whether proposed classes are sufficiently cohesive to

12    warrant adjudication by representation." *Hanlon*, F.3d at 1022 (citing *Amchem*, 521 U.S. at 623).

13    Although predominance is inherently related to commonality in that it assumes a prerequisite of

14    common issues of law and fact, "Rule 23(b)(3) focuses on the relationship between the common

15    and individual issues." *Id.* (emphasis added).  Where the core question driving the litigation

16    "would require the separate adjudication of each class member's individual claim or defense, a

17    Rule 23(b) action would be inappropriate." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d

18    1180, 1189 (9th Cir. 2001) (internal citation omitted).

19    The predominance requirement is satisfied because the overriding common issue is

20    whether WaFd's imposition of Retry NSF/OD Fees based on a single alleged "item" or payment

21    is a violation of the WaFd account agreement issued to accountholders.   The overarching

22    common issues related to WaFd's NSF fee practices predominate over any individual issues

23    relating to the calculation of damages.

24    **2.    Superiority**

25    Superiority examines whether the class action device "is superior to other available

26    methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "[T]he

Motion Preliminary Approval of Stlmt - Page 16
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

purpose of the superiority requirement is to assure that the class action is the most effective means for resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175–76 (citation and internal quotation marks omitted). In the settlement context, manageability of the class action device is not a concern. *See, e.g.*, *Spann II*, 314 F.R.D. at 323 ("[T]he other requirements of Rule 23(b)(3) such as the desirability or undesirability of concentrating the litigation of the claims in the particular forum and the likely difficulties in managing a class action, are rendered moot and irrelevant . . . ."); *see also Amchem*, 521 U.S. at 620.

Resolution of thousands of potential claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. This is especially true given that Settlement Class Members are likely unaware they have a claim for damages and are unlikely to be able to afford an attorney. *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) (superiority requirement satisfied where "class certification may be the only feasible means for [class members] to adjudicate their claims"); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 649 (S.D. Fla. 2015) ("Nearly all of the class members in these actions have claims that are so small that it would cost them much more to litigate individually than they could ever hope to recover in damages, and thus there is no reason to believe that the putative class members have any particular interest in controlling their own litigation.").

## III.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS, AND SHOULD BE APPROVED

Rule 23(e) requires the trial court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). This requirement contemplates that class notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Toys R Us*, 295 F.R.D. at 448 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). A class action settlement notice is deemed "satisfactory if

Motion Preliminary Approval of Stlmt - Page 17
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

1  it generally describes the terms of the settlement in sufficient detail to alert those with adverse

2  viewpoints to investigate and to come forward and be heard." *Churchill*, 617 F.3d at 575.

3      The proposed notices provide sufficient information to satisfy these standards. The

4  Settlement includes proposed email, postcard, and long form notices to the Settlement Class

5  Members that inform them of the terms of the Settlement and their rights to object to, or opt-out

6  of, the Settlement, or to do nothing and receive the benefits of the Settlement and be bound by it.

7  Settlement, Exs. 1-3. Email notices will be provided to customers who have provided their email

8  addresses to WaFd; postcard notice will be mailed directly to Settlement Class Members and

9  long-form notice will be available on the Settlement website. Settlement ¶ 6. The website will

10  provide Class Members with additional information relating to the Settlement. *Id.* The

11  Settlement Administrator will provide the notice and the costs will be paid by WaFd separate and

12  apart from the Settlement Fund.

13      As part of the preliminary approval order, the Court should approve the proposed forms

14  and manner of notice. The notice constitutes the "best practicable notice" under the

15  circumstances and is direct notice to each Settlement Class Member individually. The long form

16  of notice is based on plain-English forms adopted by the Federal Judicial Center and informs the

17  Class Members of all the required information, including (i) the nature of the action; (ii) the class;

18  (iii) the Class claims; (iv) that a Class Member may enter an appearance through an attorney if

19  the member so desires; (v) that the Court will exclude from the class any member who requests

20  exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a

21  class judgment on members. Settlement, Exs. 1-3. The Settlement Administrator will provide

22  the notice and report to Class Counsel who will in turn report to the Court on the effectiveness

23  of the notice plan. The notice also provides for the Court to schedule a final approval hearing,

24  which Plaintiffs request be held after Settlement Class Members have had a chance to opt-out of,

25  object to, or remain part of the Settlement.

26

Motion Preliminary Approval of Stlmt - Page 18
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

This plan is adequate and reasonably likely to ensure all Class Members are apprised of the Settlement terms and given an opportunity to file a claim, object, opt out, or be heard.  *E.g.*, *Hanson*, 2018 WL 3630284 at *6 (finding direct notice and a settlement website to be best practicable notice); *Brotherson v. Prof'l Basketball Club, L.L.C.*, No. C07-1787 RAJ, 2010 WL 11523895, at *2 (W.D. Wash. Feb. 12, 2010) (finding notice by first class mail to be the best notice practicable under the circumstances).

## IV.    PLAINTIFFS SHOULD BE APPOINTED CLASS REPRESENTATIVES AND PROPOSED CLASS COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Plaintiffs also request that the Court designate Plaintiffs as Class Representatives to implement the terms of the Settlement.  As detailed above, Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs' counsel The Kick Firm and KalielGold PLLC should be appointed as Class Counsel.  Rule 23(g) enumerates four factors for evaluating the adequacy of proposed class counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and types of claims of the type asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources counsel will commit to representing the class[.]"  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

All of these factors militate in favor of appointing Class Counsel.  They have devoted significant time and resources to prosecuting this action on behalf of Plaintiff and the proposed class.  Kaliel Decl. ¶ 19.  Class Counsel have extensive experience in litigating consumer cases, including class actions involving wrongful OD and NSF fees.  Kaliel Decl. ¶¶ 2-6, 20.  Class Counsel examined Defendant's practices and policies and then diligently obtained the data needed to analyze the class claims.  Kaliel Decl. ¶ 21. Accordingly, Class Counsel have and will

Motion Preliminary Approval of Stlmt - Page 19
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446

continue to adequately represent the interests of the Settlement Class and should be appointed as

Class Counsel.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed class for settlement purposes, preliminarily approve the proposed Settlement as fair and reasonable, authorize notice to the Class, and schedule a final fairness hearing.

DATED this 13th day of June, 2022.

**FRIEDMAN | RUBIN PLLP**

By: _s/Roger S. Davidheiserr_
Roger S. Davidheiser
1109 First Ave., Ste. 501
Seattle, WA 98101
206.501.4446
rdavidheiser@friedmanrubin.com

Jeffrey Kaliel*
Sophia Gold
**KALIELGOLD PLLC**
1100 15th St. NW, Floor 4
Washington, DC 20005
202.300.4783
jkaliel@kalielpllc.com
sgold@kalielgoldpllc.com

Taras Kick
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
310.395.2988
taras@kicklawfirm.com

* admitted _pro hac vice_

**_Attorneys for Plaintiffs and the Putative Class_**

Motion Preliminary Approval of Stlmt - Page 20
Hartnett v Wash.Fed.Bank
No. 21-cv-00888

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 13th day of June, 2022

_____

Trish Bashaw

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446